JOHN M. JAYCOX et al., Respondents, *v.* RODERICK W. CAMERON, Appellant.

When a judgment is rendered by the General Term, upon a verdict taken subject to the opinion of that court, and a statement of facts, with the questions or conclusions of law thereon, is prepared, as required by section 333 ( sub. 2) of the Code, and is made part of the record, the facts presented in the statement are the only ones which can be considered upon appeal. If the statement is defective in any respect, it must be sent back to the Supreme Court for correction.

Defendant and S. were engaged in stock speculations through T., a broker. The arrangement with T. was made, and the account was kept, in the name of defendant alone, S. acting ostensibly as agent. Plaintiffs made an agreement with S. that they might purchase stock in the name of defendant, and under his arrangement with T. Defendant did not know of this agreement at the time, but was advised of it soon after, and did not object; he also knew that the stocks purchased for plaintiffs in his name were charged in his general account, and the moneys advanced by plaintiffs as margins were credited to him. Subsequently, by agreement between defendant and S., the latter assumed the stock transactions on joint account, but defendant's name, with his knowledge, was still used, and the account kept as before ; he also notified T. that the account was under the management and subject to the direction of S. Under plaintiffs' orders, given through S., their stock was sold, and the balance coming to them thereon was credited by T. in defendant's account. The stocks purchased by defendant and S. had greatly depreciated, and this balance was retained by T. as security thereon. Defendant having refused to pay over the balance upon demand,—*Held*, that plaintiffs were entitled to recover the amount thereof in an action for money had and received.

(Argued June 5, 1872; decided June 11, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department in favor of plaintiffs, entered upon a verdict in favor of plaintiffs, taken subject to the opinion of the court at General Term.

The action was brought to recover an alleged balance in the hands of the defendant, the avails of the sale of certain stocks belonging to plaintiffs.

A statement of facts was made as prescribed by subdivision 2, section 333 of the Code, in substance as follows:

During the year 1867–8, the defendant, Cameron, was a

shipping and commission merchant in New York, having in his employ, as his principal and confidential clerk, one George R. Sampson. Cameron had made an arrangement with one Travers, a stock broker, in New York, for the purchase and holding in Cameron's name, and for purposes of speculation in the market, of the stock of the Merchants' Union Express Company.

Sampson was in fact, by agreement between him and Cameron, jointly interested in this speculation, but without the knowledge of Travers. The plaintiffs, residing at Syracuse, being desirous of speculating in the same stock, but not wishing their names to appear in the operation, made application to Sampson, who stated to them the terms on which Travers had agreed to purchase and hold for Cameron, and assumed to, and did make an agreement with them in Cameron's name, that they might purchase stock in Cameron's name and nominally upon his account through Travers, and under the agreement between Travers and Cameron. And, in pursuance of that agreement, 1,000 shares of the stock were purchased for plaintiffs, which was done—the plaintiffs advancing the requisite margin; the amount of the purchase-money being charged to Cameron in account by Travers, and the amount of margin credited to him.

Sampson was not authorized by Cameron to make this arrangement, but he (Cameron) was informed of it by Sampson within forty-eight hours and did not dissent from it; and was also informed by Travers, by the rendering of accounts of purchase, of the fact that the 1,000 shares had been purchased for his (Cameron's) account.

Travers understood from Cameron that parties in Syracuse were interested in the purchase of the 1,000 shares, and were to protect him (Cameron) in the matter. There was but one account kept by Travers with and in the name of Cameron.

Cameron knew how the account was kept.

On one occasion Cameron drew $4,000 out of this account. On one occasion the 1,000 shares were sold by Travers and a like amount immediately repurchased. This was by the desire

of the plaintiffs communicated to Sampson, who directed Travers as to the sale and repurchase. This sale and repurchase was without the personal knowledge of Cameron at the time. The account was continued, as aforesaid, down to and in May, 1868, when the plaintiffs, having in the meantime made further advances of margin, also paid over by Sampson to Travers, for the account of Cameron, and credited to him in the account, ordered a final sale of the 1,000 shares. Cameron informed Travers that the account was under Sampson's management, and ordered him to obey Sampson's directions concerning it. During the time of the running of this account the stock greatly depreciated, and in the end there was a large loss on the stock held by Travers in the name of Cameron. When the plaintiffs' stock was all sold, there was a balance due the plaintiffs on the account of the 1,000 shares of over $5,000. The amounts received on the sale were credited to Cameron by Travers in the account. After the sale an account was rendered by Travers to Cameron of all the stock up to that date. Cameron had possession of this account for nearly a month before this suit was brought, without objection. It showed a balance in favor of Travers of $9,178.79, against which Travers held 350 shares of the stock yet unsold. After Cameron had the final account on the 15th of June, 1868, and while the account remained in the same position, the plaintiffs demanded of Cameron the payment of the balance due them as shown by the account.

The said General Term, upon the facts, held the following conclusions of law:

1. That this is an action for money had and received by the defendant to the use of the plaintiffs.

2. That the defendant, Cameron, was bound by his assent to the original contract made in his name by Sampson with the plaintiffs.

3. That by virtue of and under that contract and arrangement he became a voluntary trustee for the plaintiffs as to the stock purchased on their account, and the proceeds thereof, and liable to account to them for the same.

4. That the net balance due to the plaintiffs on account of sales of the said 1,000 shares received by Travers, and with the consent of Cameron, credited to him, Cameron, was money had and received by Cameron for the use and benefit of the plaintiffs.

5. That the plaintiffs were entitled to recover said balance in this action, and a verdict for that amount in favor of the plaintiffs against the defendant, with interest from the time of the refusal to pay the same, was proper.

It appeared in the evidence that by arrangement between Cameron and Sampson in 1867, the latter assumed all the stock transactions upon joint account, and that the former had thereafter no interest therein, yet the accounts were still kept and the dealings had in his name as before, with his knowledge, and that Travers had no knowledge of Sampson's interest.

*Francis C. Barlow* for the appellant. The statement of facts under section 333 is not a finding of facts like that of a referee. (*Purchase* v. *Matteson*, 25 N. Y., 211; and see *Brown* v. *Orser*, 2 Bos., 367; *Chambers* v. *Grantyon*, 7 id., 417; *Gilbert* v. *Beach*, 16 N. Y., 606.) This is simply an action for money had and received. (*Walter* v. *Bennett*, 16 N. Y., 251.) By silence a man only ratifies such acts as he knows his assumed agent has done in his name. (*Roach* v. *Coe.*, 1 E. D. Smith, 175.) The burden is upon the party claiming satisfaction to show this knowledge. (*Nixon* v. *Palmer*, 8 N. Y., 398.) The consent of defendant to a deposit in his name, he having no control over it, only to draw it out when required, does not make him liable for its safe keeping. (*Dustin* v. *Hogden*, 38 Ill., 352.) Plaintiff cannot recover simply because his money has gone to pay defendant's debt, without the prior request or subsequent promise of the latter. (*Windsor* v. *Savage*, 9 Metcalf, 346, 348; *Richardson* v. *Williams*, 49 Maine, 558; *Beach* v. *Vanderburg*, 10 Johns., 360; *Rens. Glass Co.* v. *Reid*, 5 Cow., 603; *Bevan* v. *Thompson*, 25 Indiana, 255; 1 Parsons' Contracts, 5th ed., 471, 472.)

Opinion of the Court, per ALLEN, J.

*D. Pratt* for the respondents. Defendant, having adopted and ratified Sampson's acts, was liable to plaintiffs. (*Gage* v. *Shearman*, 2 Com., 417; *Hanks* v. *Drake*, 49 Barb., 186; *Hope* v. *Lawrence*, 50 id., 258; *Brisbane* v. *Adams*, 3 Com., 129; *Commercial Bank of Buffalo* v. *Warren*, 15 N. Y., 577; *Colvin* v. *Holbrook*, 3 Com., 126.) For neglect of duty by an agent, his principal alone is liable to third persons. (*Colvin* v. *Holbrook, supra; Cameron* v. *Reynolds*, Comp., 406; *Tuttle* v. *Love*, 7 J. R., 469; *Denny* v. *Manhattan Co.*, 2 Denio, 115.)

ALLEN, J. The verdict was given for the plaintiffs, subject to the opinion of the Court at General Term, without objection by either party.

It was virtually assented to by both that there were no controverted facts to be passed upon by the jury. But as no specific facts were found by the jury or expressly conceded by the parties, it was necessary for the purpose of an appeal to this court that a concise statement of facts should be prepared under the direction of the Supreme Court, with the questions or conclusions of law thereon. (Code, § 333.) Such statement was prepared and made a part of the record, and the facts presented in that statement are the only facts that can be considered upon this appeal.

The decision of the court below was based upon such facts, and their judgment can only be reversed upon the same state of facts. This court cannot by resorting to the evidence correct, reform or vary that statement. If it is defective in any respect, it must be sent back to the Supreme Court for correction, as was done in *Smith* v. *Grant*, reported upon an application for a resettlement of the statement. (17 How. P. R., 381.) But upon a careful examination of the evidence, it is palpable that the statement is full and accurate, and that no material fact which was either proved or conceded upon the trial has been omitted.

The fact that the defendant, from some time in December, 1867, had no actual personal interest in the stock account

which had been carried on in his name for the joint account of himself and Sampson, is not material. As Sampson's interest before was latent, so the transfer of the whole interest by the defendant to Sampson was a private transaction between the two, and the ostensible ownership, liability and interest was the same as before. The defendant *quoad* Travers and the plaintiffs occupied the same positions and was subject to the same liabilities as before the transfer to Sampson.

So far as Travers was concerned, the purchases and sales were by and for account of the defendant.

He was the responsible dealer, liable for the purchases, and entitled to the proceeds of the sales. Moneys paid to the broker went to his credit, and subject to the claims of the broker were subject to his draft. The plaintiffs' money and stocks went into the same general account with his assent, and while the plaintiffs were bound to indemnify him against loss, the money paid in as a margin by the plaintiffs or received upon the sale of stocks bought for them, was passed to the credit of the defendant on his account with Travers, and was so much money had and received by him. The defendant has had the benefit of it, and it is immaterial whether it is still to his credit with his banker or broker, subject to his draft, or has been actually withdrawn by him, or whether it is held by the broker in satisfaction of a balance due upon other dealings entering into the same general account, that is, for a general balance upon the whole account.

The liability of the defendant to Travers, for the result of Sampson's operations in his name and upon credit, is indisputable. As between Sampson and the defendant, it may well be the former is the responsible party in respect to the stocks purchased and sold on his order, but as between the defendant and third persons, the defendant is a principal, and liable as such.

The defendant loses nothing by his agency for the plaintiffs. On the contrary, a balance is due the latter on account, and for that balance they have no claim on Travers, for by the assent of all, the defendant is the client and dealer with him,

the party in the transactions and account. Sampson is not liable, for he acted as the agent of the defendant, and plaintiffs dealt with the defendant through him.

If it should be held that when the true relation between Sampson and the defendant became known to the plaintiffs, they might have sought relief against him, they were not bound to do so.

The money of the plaintiffs has gone to relieve the defendant from his liability to Travers incurred through the agency of Sampson.

If commercial gentlemen, who are supposed to know the perils of the stock exchange, encourage their confidential clerks to enter upon a course of speculations upon their credit and in their name, they have no right to complain of the result or shirk the responsibilities of the transactions.

So far as appears, there is nothing to impeach the integrity of Sampson. He has acted with the full knowledge and assent of his principal, and he has only done as others have done before him, erred in judgment.

The defendant, upon the uncontroverted facts, having the money of the plaintiffs in his hands and under his control as much as if it had gone into his general bank account and been used in his business as occasion required, in answer to the request of the plaintiffs that they should be paid, says in substance: "It is true I had your money, but I was in form and name a principal, but in fact a surety for a friend in the purchase and sale of other stocks, and upon those transactions there was a loss, and I have taken your money to indemnify myself against that loss." This is the substance of the defence set up, concisely stated.

It is simply an attempt to transfer his suretyship for Sampson, at a time when it has become onerous and expensive, to the plaintiffs.

I know of no legal process by which it can be accomplished without their consent.

The judgment must be affirmed.

All concur. Judgment affirmed.